1. TRUSTS—DUTIES OF TRUSTEES—EXECUTION OF POWER OF SALE.

Testamentary trustees are not warranted in holding real estate as to which the will contained a peremptory power of sale, merely because it had increased in value during the time that they had already held it, and there is a probability that the value will increase still more.

2. SAME—POWER OF SURROGATE'S COURT.

The surrogate's court has power to compel testamentary trustees to execute a peremptory power of sale contained in the will, or to charge them personally with expenditures necessitated by retaining the property.

3. SAME—CONDITION OF REAL-ESTATE MARKET.

The surrogate's court will not, during a time of great stagnation in the real-estate market, order testamentary trustees to make a forced sale of testator's real estate, though for 15 years they had delayed executing a peremptory power of sale contained in the will, and the property is producing no income, but they will be directed to apply to the supreme court for instructions.

Judicial settlement of the accounts of Franklin D. Locke, James C. Fargo, and Charles Fargo, as executors of the will of William G. Fargo, deceased.

John G. Milburn, for executors.

Bissell & Carey, for Herbert G. Squiers and Edward R. Bacon, contestants.

Jesse H. Behrends, special guardian, for infants.

MARCUS, S. Objections have been filed to the annual accounting of the executors by Herbert G. Squiers, as executor of the estate of Helen Squiers, deceased, and Herbert G. Squiers and Edward R.

Bacon, as executors of the estate of Georgia Fargo, deceased, parties in interest in this proceeding, that the holding of the real estate by the executors has resulted in large expenditures for the care of the same, and that the total net receipts are smaller than the disbursements. The claim is made that the executors in failing to convert the real estate into money, as directed by the will, alone are accountable for this condition; and the court is asked to direct the executors and trustees to dispose of and sell all the real estate under their control, so that those interested in the estate may receive some benefit, instead of being subject to a loss, which now seems to exist, at least during the past year, which period alone is presented at this time for consideration. By the terms of the last will and testament of William G. Fargo, deceased, it was provided as follows: "All the rest, residue, and remainder of my real and personal property, of every name, nature, and description, I give, devise, and bequeath to my executors hereinafter named, in trust, nevertheless, to convert the same into money, and to invest the same in such securities as they shall deem proper, to reinvest the same, or any part thereof, so often as it may be necessary, to collect and receive the rents, profits, and issues thereof, and to apply the same as hereinafter mentioned," etc. The questions which must control the disposition of this proceeding are, what is a "reasonable time" where a will directs a sale? and have the executors exceeded it? In Re Estate of Weston, 91 N. Y. 503, an aggravating condition of affairs was presented growing out of stocks left by the testator and under the control of the executors. The will of the testator directed, as in the case before us, the conversion of the stocks into money, without fixing any specified time; and the court held that a "reasonable time" within which the executors should exercise such a discretion was not to be measured by an arbitrary standard, but must depend upon the circumstances of each particular case. William C. Fargo having died on the 3d day of August, 1881, it readily impresses the mind that such a space of time can no longer be called "reasonable," unless exceptional facts or circumstances are shown to warrant the failure to convert during such an interim. The fact that the lands now held by the executors and trustees have increased by many thousands of dollars over the original value, when the same came into their hands, would not, of itself, warrant their holding the property under this trust, even upon the probability of the land again doubling in value within the same period, for those interested in the estate cannot be deprived of their right to enjoy whatever is given them by the testator through unwillingness on the part of the executors and trustees to sell and convert as directed. While it can scarcely be charged that the executors have shown themselves unwilling to sell, yet the fact remains that they have not disposed of the properties, though their efforts to sell cannot be overlooked. This court, undoubtedly, has the power to authorize the executors to carry out the directions of the testator and to convert the land, or to charge them personally with all expenditures growing out of the retention of the same, or both. Without describing the property in detail held by the executors, it is enough to say that mostly all is of such a nature

as is beyond the reach of the ordinary everyday purchaser. The executors, realizing the value of the properties under their control, yet unable to find purchasers with whom satisfactory terms as to payments and time could be made, have drifted along in the hope that a more active market. would in the end realize for them their reasonable expectations. But experience has taught the extreme difficulty of fixing the proper time of selling real property, and men of prudence in the management of their own affairs have often regretted their failure to know the proper time to dispose of their holdings. It is doubtless true that, under ordinary circumstances, the property in question should heretofore have been disposed of by virtue of directions contained in the will of the testator. But the fact remains that the property has not been sold, and, so far as it appears, its sale has not heretofore been insisted upon, so that the sole question now presented for my consideration is whether it would be for the best interests of all concerned in the estate to force a sale at this time. Having in mind the present conspicuous stagnation of the real-estate market, and the welfare of the infants below considered, it would seem a clear abuse of discretion to order a sale now. At the same time I fully appreciate that the existing conditions may change at any moment, and also that it is a serious question whether the executors should not have long since sold the property to the best advantage in better times. Their failure to dispose of the land, however, during a period of greater activity in the local real-estate market, cannot justify the court in ordering a forced sale now, when the demand for real estate is substantially at a standstill.

Executors and trustees are never in danger, in the execution of their trust, in adhering to the rule which enables them to dispose of property within 18 months, at the market price, when such sales are made in good faith. While not an arbitrary rule, a failure to sell after that period requires an explanation on their part, which, if reasonable, and the course is such as would be followed by prudent men in the management of their own affairs, should meet with such indulgence at the hands of courts as executors acting in good faith may prove themselves entitled to. However correct the position of the objectors may be, I cannot bring myself to direct the executors to sell the lands in question, at this time, with the knowledge that all men must have of the present financial depression and particularly the inactivity of the market in real property. A forced sale now could only result in a sacrifice of values that would be entirely unwarranted. I reach this conclusion the more readily in view of the fact that the infants, who are the wards of this court (and remainder-men), would be the worst sufferers, since the property would more than likely be purchased by others interested in the estate with means, either under their control or obtainable, and which would, in the nature of things, be without the reach of these infants. This could only result in practically wiping out their interests in so far as the real estate in question is concerned.

The objections to the account of the executors, having been urged, then withdrawn, and again urged, are likewise denied, since it was stated upon the hearing that they were urged only for the purpose

of raising the main question presented to the court,—to direct the sale of the lands in accordance with the will.   The executors, however, cannot and ought not to expose themselves to further objections in the care and management of this estate by incurring expenditures that may be questioned in future accountings.   It would seem that the safe course for them to pursue for their interests, and those of the estate, is to take directions from the supreme court, having comprehensive jurisdiction over trusts and trustees, as to the time and manner of disposition of the real property in question,—whether it should be sold in bulk or in piece, the lowest prices to be accepted, the terms on which to sell, and all other points on which they may desire to be instructed.   A decree may be presented allowing the accounts as filed, and containing a direction that the executors and trustees apply to the supreme court, within four months of the entry of this decree in such action or proceeding, for such instructions and directions in the premises, including those mentioned, as they may be advised.

Ordered accordingly.